# UNITED STATES DISTRICT COURT

**DISTRICT OF MASSACHUSETTS**                    **WESTERN DIVISION**
                                                                    **CIVIL ACTION NO.**

| | |
|---|---|
| **DONNA WEST, Individually, and Executrix of the ESTATE OF RUSSELL WEST,**     **Plaintiff,** <br><br> **v.** <br><br> **FIRSTLIGHT POWER ENTERPRISES, INC., IPR-GDF SUEZ ENERGY NORTH AMERICA, INC., ABINGTON GROUP INC.,  BAKER CORP., McELROY MANUFACTURING, INC., and ISCO INDUSTRIES, LLC,**     **Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>**COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>) |

## Allegation of Jurisdiction

This Court has Jurisdiction pursuant to 28 U.S.C. §1332. The Plaintiff is resident of the Commonwealth of Massachusetts.  At the time of the accident that is the subject matter of this litigation, the Defendants were foreign corporations.  The matter in controversy, exclusive of interest and costs, exceeds the sum specified by 28 U.S.C. §1332.  Venue is found in 28 U.S.C. 1391(a)(2). In accordance with G.L. c. 233A, §3, the Defendants are subject to jurisdiction within the Commonwealth of Massachusetts because the Defendants have the necessary minimum contacts with the Commonwealth of Massachusetts including:

(a)     contracting to do business within the Commonwealth;

(b)     contracting to supply services or things in the Commonwealth;

(c)     causing tortious injury by an act or omission in the Commonwealth;

(d)     causing tortious injury in the Commonwealth by an act or omission outside the Commonwealth in that the defendants regularly do or solicit business, engage in

other persistent courses of conduct, and derive substantial revenue from goods used or consumed or services rendered in the Commonwealth.

**The Parties**

2.      Plaintiff Donna West is the duly appointed executrix of the Estate of Russell West (decedent), who died on May 17, 2010.  *See Franklin County Probate and Family Court Docket No. FR 11PO 113EA*.

3.      Plaintiff Donna West, individually, is the surviving spouse of the decedent Russell West.

4.      Defendant FirstLight Power Enterprises, Inc. ("First Light") is a foreign corporation with its principal place of business at 1990 Post Oak Boulevard, Suite 1900, Houston, Texas.

5.      Defendant IPR-GDF SUEZ Energy North America, Inc. ("SUEZ"), formerly known as GDF SUEZ Energy North America, Inc., is a foreign corporation with its principal place of business at 1990 Post Oak Boulevard, Suite 1900, Houston, Texas.

6.      Defendant Abington Group Inc. ("Abington") is a foreign corporation with its principal place of business at 195 West Road, Portsmouth, New Hampshire.

7.      Defendant Baker Corp. ("Baker") is a foreign corporation with its principal place of business at 3020 Old Ranch Parkway, Suite 220, Seal Beach, California.

8.      Defendant McElroy Manufacturing, Inc. ("McElroy") is a foreign corporation with its principal place of business at 833 North Fulton Street, Tulsa, Oklahoma.

9.      Defendant ISCO Industries, LLC ("ISCO") is a foreign limited liability corporation with its principal place of business at 926 Baxter Avenue, Louisville, Kentucky.

**Factual Allegations**

10.      Defendant First Light, at all relevant times hereto, was and is a subsidiary of and owned by Defendant SUEZ.

11.     On or about May 2010, Defendants Light First and SUEZ were the owners and operators of a hydro-electrical generation facility in Northfield, Massachusetts known as the Northfield Mountain Station (hereinafter "the Northfield Station").

12.     The Northfield Station is a 1,080 megawatt hydro-electrical generation facility that pumps water from the Connecticut River to an upper reservoir during periods of low power demand.

13.     The man-made 300-acre upper reservoir is located approximately 800 feet above the Connecticut River and is capable of storing 5.6 billion gallons of water.

14.     At times of high electric demand, water is released from the upper reservoir down a 1,100-foot-long pressure shaft to power a hydroelectric turbine generator.

15.     The underground powerhouse of the Northfield Station includes four large reversible turbines, each capable of pumping 27,000 gallons of water per second and generating 270,000 kilowatts of electricity.

16.     Said underground powerhouse is accessible through a 2,500-foot-long tunnel and seven hundred feet below the surface; it is longer than a football field and higher than a ten-story building.

17.     Upon information and belief, engineering studies for the Northfield Station commenced in October 1964 and preliminary site preparation started approximately three years later.

18.     In approximately 1968, upon receipt of a Federal Power Commission license, the construction of dams, reservoirs, dikes, and tunnels at the Northfield Station were undertaken and completed by the predecessor owners of Defendants First Light and SUEZ.

19.     On or about 2009-2010, Defendants First Light and SUEZ, the facility owners, undertook to act jointly as the owners, engineers, project managers, general contractors and site safety

3

managers of a dewatering and silt removal project at the Northfield Station (hereinafter "the Project").

20.     Upon information and belief, the silt had accumulated over many years and silt removal from the reservoir was necessary to prevent the silt from entering into the hydroelectric turbine generators.

21.     CD Davenport (hereinafter "Davenport"), a trucking and excavating business with its principle place of business in Greenfield, Massachusetts, was hired by the Defendant First Light, on a time and materials basis, to provide trucking, excavation and related services at the Project site, as directed by the Defendant First Light.

22.     Russell West, the decedent, was a Davenport employee on or about 2009-2010, and worked at the Project site for Davenport as a supervisor.

23.     Defendants First Light and SUEZ assembled a team of subcontractors to assist in the dewatering and silt removal from the Project site.

24.     Defendant Abington and Defendant Baker were hired by Defendants First Light and SUEZ to, among other things, perform and/or oversee the pipe fusing and/or pump operations at the Project site.

25.     Among other things, the Defendant Baker supplied and operated a Gorman-Rupp water pump at the Project site.

26.     Among other things, Defendant Baker supplied and operated high-density polyethylene pipe and cutting equipment at the Project site.

27.     Defendant McElroy designs and/or manufactures the McElroy No. 412 Fusing Machine (hereinafter "McElroy 412").

4

28.     Defendant ISCO owned the McElroy No. 412 and was the supplier and/or distributor and/or renter of the McElroy 412 used the Project site.

29.      Upon information and belief, the Defendant ISCO rented the McElroy 412 used at the Project site to the Defendant Baker.

30.     Upon information and belief, among other things, the Defendant Baker operated the McElroy 412 with the Defendant Abington at the Project site.

31.     Upon information and belief, on or about May 2010, the Defendants First Light and SUEZ became gravely concerned because the Project was running behind schedule, and they feared that Defendants First Light and SUEZ would be subject to the imposition of substantial fines by the federal government for missing critical dates and/or deadlines.

32.     Upon information and belief, because of this concern, Defendants First Light and SUEZ established a twenty-four-hour-day, seven-days-a-week schedule for most of the subcontractors working at the Project site.

33.     A persistent and critical problem that concerned the Defendants First Light and SUEZ involved the difficulty of removing water from the mouth area of the tunnel.

34.     Upon information and belief, because of the pressure to complete the Project in a timely and cost efficient manner, Defendants First Light, SUEZ, Abington and Baker hastily made an unreasonable, dangerous and reckless decision and/or plan (hereinafter "the Plan") to fuse together on-site sections of the high-density polyethylene pipe supplied by the Defendant Baker and to design, manufacture and operate and/or perform a makeshift pumping operation at the mouth of the tunnel at the Project site, using, among other things, the aforementioned Gorman-Rupp water pump supplied by the Defendant Baker, as well as the McElroy 412 fusing machine designed and/or manufactured by the Defendant McElroy and owned and/or supplied and/or

distributed and/or rented to the Project site by the Defendant ISCO.

35.     The Plan was designed and/or manufactured and/or approved jointly by Defendants First Light, SUEZ, Baker and Abington and was not based upon sound engineering practices nor in compliance with industrial standards of safety.

36.     Upon information and belief, the Plan was designed and/or developed and/or approved jointly by Defendants First Light, SUEZ, Baker and Abington during the previous weekend and/or during and/or throughout the night before the decedent Russell West reported for work at the Project site at approximately 6:00 a.m. on Monday, May 17, 2010.

37.     On the morning of May 17, 2010, when the decedent Russell West reported for work at approximately 6:00 a.m., the fused pipe and pumping were already connected and set up to begin pumping operations in accordance to the Plan.

38.     Upon information and belief, pumping operations based on the Plan began for the first time, and without any prior testing, on the morning of May 17, 2010, when the decedent Russell West reported for work at approximately 6:00 a.m.

39.     Upon information and belief, when the pumping operation began for the first time, the fused-together piping broke loose, striking the decedent Russell West and inflicting mortal injuries.

40.     As a direct and proximate result of the unreasonable, dangerous, and reckless Plan designed and/or developed and/or approved jointly by Defendants First Light, SUEZ, Baker and Abington, as well the failure of the Defendant McElroy and the Defendant ISCO to design and/or manufacture and/or distribute and/or supply and/or rent the McElroy 412 without design and/or manufacturing defects and/or fitness for its particular purpose as well as their respective failure to provide adequate warnings and/or instructions and/or training for the McElroy 412, the

decedent Russell West suffered bodily injury, pain, suffering, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and death.

## COUNT I

### ESTATE OF RUSSELL WEST v. FIRSTLIGHT POWER ENTERPRISES, INC.
### NEGLIGENCE
**(Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)**

41.    Plaintiff re-alleges paragraphs 1 through 40 above.

42.    At all times relevant hereto, Defendant First Light held itself out to be a corporation skilled in the operation of the hydro-electrical generation facility at Northfield Station, and represented itself as an entity knowledgeable, competent and qualified to be the facility owner, engineer, project manager, general contractor, and site safety manager of the Project.

43.    Defendant First Light's failure to use due and reasonable care as facility owner, engineer, project manager, general contractor, and site safety manager of the Project was the direct and proximate cause of the death of Russell West.

44.    The heirs of Russell West are entitled to the fair monetary value of the decedent, including, but not limited to, compensation for the loss of services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant First Light, together with the costs, interest, and such other and further relief as the Court deems appropriate.

## COUNT II

## ESTATE OF RUSSELL WEST v. FIRSTLIGHT POWER ENTERPRISES, INC.
## PUNITIVE DAMAGES
### (Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)

45.     Plaintiff re-alleges paragraphs 1 through 44 above.

46.     At all times relevant hereto, the Defendant First Light held itself out to be a corporation skilled in the operation of the hydro-electrical generation facility at Northfield Station, and represented itself as an entity knowledgeable, competent and qualified to be the facility owner, engineer, project manager, general contractor, and site safety manager of the Project.

47.     The Defendant First Light's conduct, as the facility owner, engineer, project manager, general contractor, and site safety manager of the Project, in designing, approving, controlling, supervising and/or deciding to hastily use a makeshift and/or dangerously improvised piping system at the Project site on or before May 17, 2010, was grossly negligent, willful, wanton and/or reckless conduct and was the direct and proximate cause of the death of Russell West.

WHEREFORE, Plaintiff demands judgment for punitive damages against Defendant First Light, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT III

## DONNA WEST, Individually v. FIRSTLIGHT POWER ENTERPRISES, INC.
## LOSS OF CONSORTIUM

48.     Plaintiff Donna West, Individually, re-alleges paragraphs 1 through 47 above.

49.     At all times relevant hereto, the Defendant First Light held itself out to be a corporation skilled in the operation of the hydro-electrical generation facility at Northfield Station, and represented itself as an entity knowledgeable, competent and qualified to be the facility owner,

engineer, project manager, general contractor, and site safety manager of the Project.

50.     As a direct and proximate result of the Defendant First Light's negligence and/or grossly negligent, willful, wanton and/or reckless conduct, the Plaintiff Donna West, Individually, has suffered and will continue to suffer the loss of the benefit of the full services, society, and affection of her husband, Russell West.

WHEREFORE, Plaintiff Donna West, Individually, demands judgment for damages against Defendant First Light, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT IV

### ESTATE OF RUSSELL WEST v. FIRSTLIGHT POWER ENTERPRISES, INC. ULTRA HAZARDOUS ACTIVITY – STRICT LIABILITY

51.     Plaintiff re-alleges paragraphs 1 through 50 above.

52.     At all times relevant hereto, the Defendant First Light engaged in ultra hazardous activity on or before May 17, 2010 at the Project site by hastily using and/or overseeing a makeshift and dangerously improvised piping system to remove the water from the mouth area of the tunnel at the Project site.

53.     The use of a makeshift and dangerously improvised piping system at the Project site is an ultra hazardous activity in that it involves a serious risk of harm which cannot be eliminated by the exercise of the utmost care.

54.     As such, the Defendant First Light should be held strictly liable for the death of the decedent, which was inflicted as a direct and proximate result of the ultra hazardous activity alleged hereinbefore.

55.     The heirs of Russell West are entitled to the fair monetary value of the decedent, including, but not limited to, compensation for the loss of services, protection, care, assistance,

society, companionship, comfort, guidance, counsel and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant First Light, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT V

## ESTATE OF RUSSELL WEST v. IPR-GDF SUEZ ENERGY NORTH AMERICA, INC. NEGLIGENCE
### (Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229 § 2)

56.    Plaintiff re-alleges paragraphs 1 through 55 above.

57.    At all times relevant hereto, the Defendant SUEZ held itself out to be a corporation skilled in the operation of the hydro-electrical generation facility at Northfield Station, and represented itself as an entity knowledgeable, competent and qualified to be the facility owner, engineer, project manager, general contractor, and site safety manager of the Project.

58.    Defendant SUEZ's failure to use due and reasonable care as facility owner, engineer, project manager, general contractor, and site safety manager of the Project was the direct and proximate cause of the death of Russell West.

59.    The heirs of Russell West are entitled to the fair monetary value of the decedent, including, but not limited to, compensation for the loss of services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant SUEZ, together with the costs, interest, and such other and further relief as the Court deems appropriate.

## COUNT VI

## ESTATE OF RUSSELL WEST v. IPR-GDF SUEZ ENERGY NORTH AMERICA, INC.
## PUNITIVE DAMAGES
### (Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)

60.    Plaintiff re-alleges paragraphs 1 through 59 above.

61.    At all times relevant hereto, the Defendant SUEZ held itself out to be a corporation skilled in the operation of the hydro-electrical generation facility at Northfield Station, and represented itself as an entity knowledgeable, competent and qualified to be the facility owner, engineer, project manager, general contractor, and site safety manager of the Project.

62.    The Defendant Suez's conduct, as the facility owner, engineer, project manager, general contractor, and site safety manager of the Project, in designing, approving, controlling, supervising and/or deciding to hastily use a makeshift and/or dangerously improvised piping system at the Project site on or before May 17, 2010, was grossly negligent, willful, wanton and/or reckless conduct and was the direct and proximate cause of the death of Russell West.

WHEREFORE, Plaintiff demands judgment for punitive damages against Defendant SUEZ, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT VII

## DONNA WEST, Individually v. IPR-GDF SUEZ NORTH AMERICA, INC.
## LOSS OF CONSORTIUM

63.    Plaintiff Donna West, Individually, re-alleges paragraphs 1 through 62 above.

64.    At all times relevant hereto, the Defendant SUEZ held itself out to be a corporation skilled in the operation of the hydro-electrical generation facility at Northfield Station, and represented itself as an entity knowledgeable, competent and qualified to be the facility owner,

11

engineer, project manager, general contractor, and site safety manager of the Project.

65.     As a direct and proximate result of the Defendant SUEZ's negligence and/or grossly negligent, willful, wanton and/or reckless conduct, the Plaintiff Donna West, Individually, has suffered and will continue to suffer the loss of the benefit of the full services, society, and affection of her husband, Russell West.

WHEREFORE, Plaintiff Donna West, Individually, demands judgment for damages against Defendant SUEZ, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT VIII

### ESTATE OF RUSSELL WEST v. IPR-GDF SUEZ NORTH AMERICA, INC. ULTRA HAZARDOUS ACTIVITY – STRICT LIABILITY

66.     Plaintiff re-alleges paragraphs 1 through 65 above.

67.     At all times relevant hereto, the Defendant SUEZ engaged in ultra hazardous activity on or before May 17, 2010 at the Project site by hastily using and/or overseeing a makeshift and dangerously improvised piping system to remove the water from the mouth area of the tunnel at the Project site.

68.     The use of a makeshift and dangerously improvised piping system at the Project site is an ultra hazardous activity in that it involves a serious risk of harm which cannot be eliminated by the exercise of the utmost care.

69.     As such, the Defendant SUEZ should be held strictly liable for the death of the decedent, which was inflicted as a direct and proximate result of the ultra hazardous activity alleged hereinbefore.

70.     The heirs of Russell West are entitled to the fair monetary value of the decedent, including, but not limited to, compensation for the loss of services, protection, care, assistance,

society, companionship, comfort, guidance, counsel and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant SUEZ, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT IX

### ESTATE OF RUSSELL WEST v. ABINGTON GROUP INC.
### NEGLIGENCE
### (Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)

71.     Plaintiff re-alleges paragraphs 1 through 70 above.

72.     At all relevant times hereto, the Defendant Abington held itself out to be a reasonable and prudent corporation, and represented itself as an entity that was knowledgeable, skilled, competent and qualified to perform and/or oversee the pipe fusing and/or pump operations at the Project.

73.     Defendant Abington's failure to use due and reasonable care in the performance and/or oversight of the pipe fusing and/or pump operations at the Project was a direct and proximate cause of the death of Russell West.

74.     The heirs of Russell West are entitled to the fair monetary value of the decedent, including, but not limited to, compensation for the loss of services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant Abington, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT X

### ESTATE OF RUSSELL WEST v. ABINGTON GROUP INC.
### PUNITIVE DAMAGES
#### (Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)

75.     Plaintiff re-alleges paragraphs 1 through 74 above.

76.     At all relevant times hereto, the Defendant Abington held itself out to be a reasonable and prudent corporation, and represented itself as an entity that was knowledgeable, skilled, competent and qualified to perform and/or oversee the pipe fusing and/or pump operations at the Project.

77.     The Defendant Abington's conduct in its performance and/or oversight of the pipe fusing and/or pump operations at the Project, by, among other things, hastily using a makeshift and dangerously improvised fusing and piping system at the Project site on or before May 17, 2010, was grossly negligent, willful, wanton and/or reckless conduct that was a direct and proximate cause of the death of Russell West.

WHEREFORE, Plaintiff demands judgment for punitive damages against Defendant Abington, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT XI

### DONNA WEST, Individually v. ABINGTON GROUP INC.
### LOSS OF CONSORTIUM

78.     Plaintiff Donna West, Individually, re-alleges paragraphs 1 through 77 above.

79.     At all relevant times hereto, the Defendant Abington held itself out to be a reasonable and prudent corporation, and represented itself as an entity that was knowledgeable, skilled, competent and qualified to perform and/or oversee the pipe fusing and/or pump operations at the Project.

80.     As a direct and proximate result of the Defendants Abington's negligence and/or grossly

negligent, willful, wanton and/or reckless conduct, the Plaintiff Donna West, Individually, has

suffered and will continue to suffer the loss of the benefit of the full services, society, and

affection of her husband, Russell West.

WHEREFORE, Plaintiff Donna West, Individually, demands judgment for damages

against Defendant Abington, together with the costs, interest and such other and further relief as

the Court deems appropriate.

## COUNT XII

### ESTATE OF RUSSELL WEST v. ABINGTON GROUP INC.
### ULTRA HAZARDOUS ACTIVITY – STRICT LIABILITY

81.      Plaintiff re-alleges paragraphs 1 through 80 above.

82.     At all times relevant hereto, the Defendant Abington engaged in ultra hazardous activity

on or before May 17, 2010 at the Project site by hastily using and/or overseeing a makeshift and

dangerously improvised piping system to remove the water from the mouth area of the tunnel at

the Project site.

83.     The use of a makeshift and dangerously improvised piping system at the Project site is an

ultra hazardous activity in that it involves a serious risk of harm which cannot be eliminated by

the exercise of the utmost care.

84.     As such, the Defendant Abington should be held strictly liable for the death of the

decedent, which was inflicted as a direct and proximate result of the ultra hazardous activity

alleged hereinbefore.

85.     The heirs of Russell West are entitled to the fair monetary value of the decedent,

including, but not limited to, compensation for the loss of services, protection, care, assistance,

society, companionship, comfort, guidance, counsel and advice of the decedent and to the

15

reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant Abington, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT XIII

### ESTATE OF RUSSELL WEST v. BAKER CORP.
### NEGLIGENCE
**(Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)**

86.     Plaintiff re-alleges paragraphs 1 through 85 above.

87.     At all relevant times hereto, the Defendant Baker held itself out to be a reasonable and prudent corporation, and represented itself as an entity that was knowledgeable, skilled, competent and qualified to perform and/or oversee the pipe fusing and/or pump operations at the Project.

88.     Defendant Baker's failure to use due and reasonable care in the performance and/or oversight of the pipe fusing and/or pump operations at the Project was a direct and proximate cause of the death of Russell West.

89.     The heirs of Russell West are entitled to the fair monetary value of the decedent, including, but not limited to, compensation for the loss of services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant Baker, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT XIV

### ESTATE OF RUSSELL WEST v. BAKER CORP.
### PUNITIVE DAMAGES
**(Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)**

90.     Plaintiff re-alleges paragraphs 1 through 89 above.

91.     At all relevant times hereto, the Defendant Baker held itself out to be a reasonable and prudent corporation, and represented itself as an entity that was knowledgeable, skilled, competent and qualified to perform and/or oversee the pipe fusing and/or pump operations at the Project.

92.     The Defendant Baker's conduct in its performance and/or oversight of the pipe fusing and/or pump operations at the Project, by, among other things, hastily using a makeshift and dangerously improvised fusing and piping system at the Project site on or before May 17, 2010, was grossly negligent, willful, wanton and/or reckless conduct that was a direct and proximate cause of the death of Russell West.

WHEREFORE, Plaintiff demands judgment for punitive damages against Defendant Baker, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT XV

### DONNA WEST, Individually v. BAKER CORP.
### LOSS OF CONSORTIUM

93.     Plaintiff Donna West, Individually, re-alleges paragraphs 1 through 92 above.

94.     At all relevant times hereto, the Defendant Baker held itself out to be a reasonable and prudent corporation, and represented itself as an entity that was knowledgeable, skilled, competent and qualified to perform and/or oversee the pipe fusing and/or pump operations at the Project.

95.     As a direct and proximate result of the Defendants Baker's negligence and/or grossly

negligent, willful, wanton and/or reckless conduct, the Plaintiff Donna West, Individually, has

suffered and will continue to suffer the loss of the benefit of the full services, society, and

affection of her husband, Russell West.

WHEREFORE, Plaintiff Donna West, Individually, demands judgment for damages

against Defendant Baker, together with the costs, interest and such other and further relief as the

Court deems appropriate.

**COUNT XVI**

**ESTATE OF RUSSELL WEST v. BAKER CORP.**
**ULTRA HAZARDOUS ACTIVITY – STRICT LIABILITY**

96.      Plaintiff re-alleges paragraphs 1 through 95 above.

97.     At all times relevant hereto, the Defendant Baker engaged in ultra hazardous activity on

or before May 17, 2010 at the Project site by hastily using and/or overseeing a makeshift and

dangerously improvised piping system to remove the water from the mouth area of the tunnel at

the Project site.

98.     The use of a makeshift and dangerously improvised piping system at the Project site is an

ultra hazardous activity in that it involves a serious risk of harm which cannot be eliminated by

the exercise of the utmost care.

99.     As such, the Defendant Baker should be held strictly liable for the death of the decedent,

which was inflicted as a direct and proximate result of the ultra hazardous activity alleged

hereinbefore.

100.    The heirs of Russell West are entitled to the fair monetary value of the decedent,

including, but not limited to, compensation for the loss of services, protection, care, assistance,

society, companionship, comfort, guidance, counsel and advice of the decedent and to the

18

reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant Baker, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT XVII

### ESTATE OF RUSSELL WEST v. McELROY MANUFACTURING INC.
### NEGLIGENCE
**(Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)**

101.    Plaintiff re-alleges paragraphs 1 through 100 above.

102.    At all times relevant hereto, Defendant McElroy held itself out to be a reasonable and prudent manufacturing corporation, representing itself as an entity that was knowledgeable, skilled, competent and qualified to design, manufacture, and sell the McElroy 412, and to provide adequate training and/or instructions for the use of the McElroy 412, as well as adequately warn foreseeable users of its dangers.

103.    The separation and failure of the fused high-density polyethylene pipe at the Project site, the result of which inflicted mortal injuries upon the decedent, was the direct and proximate result of the Defendant McElroy's failure to exercise due care as designer and/or manufacturer of the McElroy 412 used at the Project site, in that the Defendant McElroy defectively designed and/or manufactured the McElroy 412 and/or failed to warn the decedent and foreseeable users of the design and/or manufacturing defects that said Defendant knew or should have known to exist in the McElroy 412 used at the Project site.

104.    The separation and failure of the fused high-density polyethylene pipe at the Project site, the result of which inflicted mortal injuries upon the decedent, was the direct and proximate result of the Defendant McElroy's failure to exercise due care as designer and/or manufacturer the McElroy 412 used at the Project site, in that the Defendant McElroy failed to provide

adequate instructions and/or training and/or warnings of the dangers of the McElroy 412 to its

known and/or foreseeable users.

105.    The heirs of Russell West are entitled to the fair monetary value of the decedent,

including, but not limited to, compensation for the loss of services, protection, care, assistance,

society, companionship, comfort, guidance, counsel and advice of the decedent and to the

reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant McElroy,

together with the costs, interests and such other and further relief as the Court deems appropriate.

### COUNT XVIII

**ESTATE OF RUSSELL WEST v. McELROY MANUFACTURING INC.**
**BREACH OF WARRANTY ARISING UNDER G.L. c. 106, ARTICLE 2 et. seq.**
**(Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)**

106.    Plaintiff re-alleges paragraphs 1 through 105 above.

107.    At all times relevant hereto, the McElroy 412, the fusing machine manufactured and/or

distributed by Defendant McElroy, was unreasonably dangerous and unsafe, was not

merchantable and was not fit for its intended use, thereby constituting breach and/or breaches of

warranty, in that:

a.       The McElroy 412 fusing machine was designed and/or manufactured defectively, and/or

failed to provide adequate warnings for manufacturing and/or design defects that the Defendant

McElroy knew or should have known the existence thereof, as alleged hereinbefore;

b.       The McElroy 412, with its defective design and/or defective manufacturing and/or lack of

adequate warnings for said manufacturing and/or design defects that the Defendant McElroy

knew or should have known about, was placed in the stream of commerce by the Defendant

McElroy, and  expected to, and did, reach the decedent and other foreseeable users without

substantial change affecting that condition;

c.      The McElroy 412 failed to perform as safely as an ordinary user would expect when used as intended or in a manner reasonably foreseeable by Defendant McElroy;

d.      The McElroy 412 was not fit for its particular purpose;

e.      The risk of dangers in the design and or/manufacturing defects in the McElroy 412 outweighed the benefits of placing the defective McElroy 412 in the stream of commerce;

f.      At all times material to this complaint, Defendant McElroy inadequately warned or failed to warn the decedent, and/or foreseeable users of the design and/or manufacturing defects and/or potential dangers in using the McElroy 412, which said Defendant knew or should have known to exist in the McElroy 412; and/or

g.      The inadequate warning or failure to warn in and of itself constitutes a defect in the McElroy 412.

108.    As a result of the foregoing, the Defendant McElroy breached its express and implied warranties of merchantability and fitness for a particular purpose, arising under G.L. c. 106, Article 2 *et. seq.*, and therefore the Defendant McElroy is strictly liable to the Plaintiffs for breach of warranty and the resulting mortal injuries to the decedent.

109.    The heirs of Russell West are entitled to the fair monetary value of the decedent, including, but not limited to, compensation for the loss of services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred.

        WHEREFORE, Plaintiff demands judgment for damages against Defendant McElroy, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT XIX

## DONNA WEST, Individually v. McELROY MANUFACTURING, INC. LOSS OF CONSORTIUM

110.    Plaintiff Donna West, Individually, re-alleges paragraphs 1 through 109 above.

111.    At all times relevant hereto, Defendant McElroy held itself out to be a reasonable and prudent manufacturing corporation, representing itself an entity that was knowledgeable, skilled, competent and qualified to design, manufacture, and sell the McElroy 412, as well as provide adequate training and/or instructions and/or warnings to foreseeable users of the McElroy 412.

112.    As a direct and proximate result of the Defendant McElroy's negligence, breach of express and implied warranties of merchantability and fitness for a particular purpose, defective and/or dangerous design and/or manufacture, and  inadequate warnings and/or inadequate training and/or instructions of the McElroy 412 and its component parts which were placed in the stream of commerce, Plaintiff Donna West, Individually, has suffered and will continue to suffer the loss of the benefit of the full services, society, and affection of her husband, Russell West.

WHEREFORE, Plaintiff Donna West, Individually, demands judgment for damages against Defendant McElroy, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT XX

## ESTATE OF RUSSELL WEST v. ISCO INDUSTRIES,  LLC NEGLIGENCE
### (Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)

113.    Plaintiff re-alleges paragraphs 1 though 112 above.

114.    At all times relevant hereto, the Defendant ISCO held itself out to be a reasonable and prudent limited liability corporation, representing itself as an entity that was knowledgeable, skilled, competent and qualified to own and/or supply and/or distribute and/or rent, among other

things, the McElroy 412 used at the Project site, as well as to provide adequate warnings, training and/or instructions to foreseeable users of the McElroy 412.

115.    The separation and failure of the fused high-density polyethylene pipe at the Project site, the result of which inflicted mortal injuries upon the decedent, was the direct and proximate result of the Defendant ISCO's failure to exercise due care as owner and/or supplier and/or distributer and/or renter of, among other things, the McElroy 412 used at the Project site, in that the Defendant ISCO failed to warn the decedent and foreseeable users of the design and/or manufacturing defects that said Defendant knew or should have known to exist in the McElroy 412 used at the Project site.

116.    The separation and failure of the fused high-density polyethylene pipe at the Project site, the result of which inflicted mortal injuries upon the decedent, was the direct and proximate result of the Defendant ISCO's failure to exercise due care as owner and/or supplier and/or distributer and/or renter of, among other things, the McElroy 412 used at the Project site, in that the Defendant ISCO failed to provide adequate instructions and/or training and/or warnings of the dangers of the McElroy 412 to its known and/or foreseeable users.

117.    The heirs of Russell West are entitled to the fair monetary value of the decedent, including, but not limited to, compensation for the loss of services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant ISCO, together with the costs, interest and such other and further relief as the Court deems appropriate.

### COUNT XXI

### ESTATE OF RUSSELL WEST v. ISCO INDUSTRIES, LLC
### BREACH OF WARRANTY ARISING UNDER G.L. c. 106, ARTICLE 2 et. seq.
**(Pursuant to the Massachusetts Wrongful Death Statute, G.L. c. 229, § 2)**

118.    Plaintiff re-alleges paragraphs 1 through 117 above.

119.    At all times relevant hereto, the McElroy 412 used at the Project site and owned and/or supplied and/or distributed and/or rented by the Defendant ISCO was unreasonably dangerous and unsafe, was not merchantable, and was not fit for its intended use, thereby constituting breach and/or breaches of warranty, in that:

a.       The McElroy 412 used at the Project site and owned and/or supplied and/or distributed and/or rented by the Defendant ISCO was designed and/or manufactured defectively, and/or failed to provide warnings for manufacturing and/or design defects that the Defendant ISCO knew or should have known the existence thereof, as alleged hereinbefore;

b.       The McElroy 412 used at the Project site and owned and/or supplied and/or distributed and/or rented by the Defendant ISCO, with its defective design and/or defective manufacturing, and its lack of adequate warnings for said manufacturing and/or design defects that the Defendant ISCO knew or should have known about, was placed in the stream of commerce by the Defendant ISCO, and expected to, and did reach the decedent and other foreseeable users without substantial change affecting that condition;

c.       The McElroy 412 used at the Project site and owned and/or supplied and/or distributed and/or rented by the Defendant ISCO failed to perform safely as an ordinary user would expect when used as intended or in a manner reasonably foreseeable by Defendant ISCO;

d.       The McElroy 412 used at the Project site and owned and/or supplied and/or distributed and/or rented by the Defendant ISCO was not fit for its particular purpose;

e.      The risks of dangers in the design and/or manufacturing defects in, among other things, the McElroy 412 used at the Project site and owned and/or supplied and/or distributed and/or rented by the Defendant ISCO, outweighed the benefits of placing said McElroy 412 into the stream of commerce;

f.      At all times material to this complaint, the Defendant ISCO inadequately warned or failed to warn the decedent and/or other foreseeable users of the design and/or manufacturing defects and/or potential dangers in using the McElroy 412, which said Defendant knew or should have known to exist in the McElroy 412; and/or

g.      The inadequate warning or failure to warn in and of itself constitutes a defect in the McElroy 412 used at the Project site and owned and/or supplied and/or distributed and/or rented by the Defendant ISCO.

120.    As a result of the foregoing, the Defendant ISCO breached its express and implied warranties of merchantability and fitness for a particular purpose arising, under G.L. c. 106, Article 2 *et. seq*., and therefore the Defendant ISCO is strictly liable to the Plaintiffs for breach of warranty and the resulting mortal injuries to the decedent.

121.    As such, the heirs of Russell West are entitled to the fair monetary value of the decedent, including, but not limited to, compensation for the loss of services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice of the decedent and to the reasonable medical, funeral and burial expenses incurred.

WHEREFORE, Plaintiff demands judgment for damages against Defendant ISCO, together with the costs, interest and such other and further relief as the Court deems appropriate.

## COUNT XXII

## DONNA WEST, Individually v. ISCO INDUSTRIES, LLC
## LOSS OF CONSORTIUM

122.    Plaintiff Donna West, Individually, re-alleges paragraphs 1 through 121 above.

123.    At all times relevant hereto, the Defendant ISCO held itself out to be a reasonable and prudent limited liability corporation, representing itself as an entity that was knowledgeable, skilled, competent and qualified to own and/or supply and/or distribute and/or rent, among other things, the McElroy 412 used at the Project site, as well as to provide adequate warnings, training and/or instructions to foreseeable users the McElroy 412.

124.    As a direct and proximate result of the Defendant ISCO's negligence, breach of express and implied warranties of merchantability and fitness for a particular purpose, and the defective and dangerous design and/or manufacture and/or inadequate warnings and/or instructions and/or training of the McElroy 412 used at the Project site that said Defendant owned and/or supplied and/or distributed and/or rented, the Plaintiff Donna West, individually, has suffered and will continue to suffer the loss of the benefit of the full services, society, and affection of her husband, Russell West.

        WHEREFORE, Plaintiff Donna West, Individually, demands judgment for damages against Defendant ISCO, together with the costs, interest and such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff Donna West, Individually, and as Executrix of the Estate of Russell West, demands a trial by jury on all issues so triable as a matter of right.

Respectfully Submitted,
Plaintiff Donna West, Individually, and as
Executrix of the Estate of Russell West,
By and Through Her Attorneys:


/s/ Thomas T. Merrigan_____
Thomas T. Merrigan, BBO 343480
Rawson Merrigan and Litner, LLP
393 Main Street
Greenfield, MA  01301
Tel. (413) 774-5300
Merrigan@valinet.com



/s/ Steven M. Litner_____
Steven M. Litner, BBO 630247
Rawson Merrigan and Litner, LLP
185 Devonshire Street, Suite 1100
Boston, MA 021101
Tel. (617) 348-0988
Steven.Litner@rml-lawyers.com

Date: April 5, 2012